UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEIRDRE ROSSING, | : CIVIL ACTION NO. |
| Plaintiff, | : |
| v. | : |
| MCELROY, DEUTSCH, MULVANY & CARPENTER, LLP, | : |
| Defendant. | : |
| | : March 8, 2018 |

## COMPLAINT

### JURISDICTION AND VENUE

1. This is an action for damages, declaratory and injunctive relief, and attorneys' fees brought pursuant to the Americans with Disabilities Act, as amended ("ADAAA") 42 U.S.C. §12101 et seq., the Family Medical Leave Act ("FMLA") 29 U.S.C. §2611 et seq., and related state law claims pursuant to the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §46a-60(a) et seq. This action seeks declaratory, monetary, compensatory, liquidated and punitive damages, equitable relief, and attorneys' fees.

2. Jurisdiction of this action is invoked pursuant to 28 U.S.C. §§1331 and 1343. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367, in that the state law claims are so related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue in this district is appropriate pursuant to 28 U.S.C. §1391 because this is the district in which the plaintiff resides and in which the cause of action arose.

**PARTIES AND ADMINISTRATIVE PREREQUISITES**

4. The plaintiff, Deirdre ("Dee") Rossing ("plaintiff" or "Rossing"), is a citizen of the United States, actually residing in Windsor, Connecticut.

5. At all times relevant to this Complaint, plaintiff was an employee of the defendant, as that term is defined by the ADAAA, 42 U.S.C. §12111(4), the FMLA, 29 U.S.C. §2611(2) and the CFEPA, Conn. Gen. Stat. §46a-51(9).

6. The defendant is McElroy, Deutsch, Mulvaney & Carpenter, LLP ("MDMC" or "the Firm"), which is registered to do business in Connecticut, has a headquarters located at 1300 Mt. Kemble Avenue, Morristown, New Jersey and has a Hartford office located at One State Street, 14th Floor, Hartford, Connecticut.

7. At all times relevant to this Complaint, defendant was engaged in a business affecting commerce, employed more than 50 employees, and has been an employer within the meaning of the ADAAA, 42 U.S.C. §12111(5)(A), the FMLA, 29 U.S.C. 29 U.S.C §2611(4) and the CFEPA, Conn. Gen. Stat. §46a-51(10).

8. On or about January 12, 2017, plaintiff filed administrative charges of discrimination on the basis of her disability and of retaliation with the Connecticut Commission of Human Rights and Opportunities ("CHRO") and with the Equal Employment Opportunities Commission ("EEOC").

9. On or about January 25, 2018, plaintiff received a Notice of Right to Sue from the EEOC. On or about February 1, 2018, plaintiff received a Release of Jurisdiction from the CHRO.

10. Plaintiff has fulfilled all administrative prerequisites necessary to maintain this action.

**FACTS**

11. Plaintiff was employed by defendant and its predecessor firm, Pepe & Hazard LLP, for nearly seventeen (17) years, as follows – from October 11, 1999 until April 30, 2010 by Pepe & Hazard, and then by MDMC from May 1, 2010 until her termination on July 21, 2016.

12. Plaintiff is an individual with a disability as that term is defined by the ADAAA and the CFEPA. In the alternative, plaintiff has a record of a disability and/or was regarded by defendant as having a disability within the meaning of the ADAAA and/or CFEPA. More specifically, plaintiff suffers from a foot impairment, degenerative disc disease and diabetes.

13. Plaintiff's conditions are chronic and substantially limit the operation of several major bodily functions and/or major life activities including, but not limited to:

   a. walking, standing, nerve function (foot impairment)
   b. walking, sitting, standing, bending, lifting, caring for oneself, performing manual tasks, nerve function, concentrating, thinking, sleeping (degenerative disc disease)
   c. Endocrine function, nerve function, eating, caring for oneself (diabetes).

14. At all times relevant to this complaint, plaintiff was employed by the respondent as a legal assistant at the Firm's Hartford office.

15. At all times relevant to this complaint, including at the time of her termination, plaintiff was a qualified individual with a disability, capable of performing the essential duties of her position as legal assistant, with or without reasonable accommodation(s).

3

16. Defendant was aware of plaintiff's disabilities, in whole or in part, at least as of approximately 2000 (diabetes), 2003 (foot impairment), Fall 2014 (degenerative disc disease).

17. Plaintiff was assigned to work primarily with attorneys Bernard Jacques (since approximately 2005) and Daniel Klau (since approximately 2010), and also with attorney Rory Farrell (as of January 1, 2015). Plaintiff also occasionally performed work for other of the Firm's attorneys on an as-needed and/or project basis.

18. At the time of plaintiff's termination, and since at least 2011, plaintiff also reported to Susan Gay, Office Administrator for the Firm's New England Offices.

19. On information and belief, none of plaintiff's direct supervisors are disabled under the ADAAA and/or CFEPA.

20. Throughout plaintiff's employment with MDMC, plaintiff performed the duties and responsibilities of her job successfully, in a dedicated, competent and satisfactory manner.

21. Plaintiff received satisfactory or better annual evaluations in recent years as follows: on or about April 12, 2013 for the 2012/2013 fiscal year (April 1-March 31); on or about March 27, 2014 for the 2013/2014 fiscal year; and on or about April 15, 2015 for the 2014/2015 fiscal year. She also received a salary increase as a result of each of these positive evaluations on or about April 1 of 2013, 2014 and 2015.

22. As a result of serious medical condition(s), plaintiff was out of work on an approved FMLA leave from on or about June 29, 2015 until on or about October 6, 2015, though that leave became a part-time or interim leave after plaintiff returned to

work – first on a part time basis on or about August 19, and then full time on or about September 14, 2015.

23. As a result of her degenerative disc disease, plaintiff was out of work on an approved FMLA leave from on or about December 15, 2015 through March 1, 2016.

24. On information and belief, holiday bonuses were paid out to employees of the Firm on or about December 18, 2015.

25. Plaintiff did not timely receive her holiday bonus in December 2015. But instead received it in early 2016, and only after inquiring about it with Ms. Gay – who claimed to have to inquire with John A. Dunlea, the Firm's Chief Financial and Operating Officer, about whether plaintiff would be getting a holiday bonus.

26. Plaintiff returned to work from FMLA leave on March 2, 2016.

27. That same day, March 2, 2016, Ms. Gay notified all of the Firm's Hartford staff via email that it was time for each staff member to complete the self-evaluation form that was part of the annual performance review process. Such review was for the period of April 1, 2015 through March 31, 2016. Ms. Gay also stated that the annual performance reviews and any potential salary increases would be effective on April 1, 2016.

28. On March 9, 2016, Ms. Gay informed plaintiff, via an email which was copied to attorney Jacques and Klau and Mr. Dunlea, as follows: "Based upon your FMLA leave for a good part of 2015 and two months into this year, your performance review is being waived this year. There will be no need for evaluation forms to be completed by you or your attorneys."

29.     Attorney Klau responded to Ms. Gay's email, in relevant part, as follows: "But when you were here, you were EXCELLENT!!!!!"

30.     At no point during the 2015/2016 fiscal year had anyone at the Firm advised the plaintiff or made her aware in any way that there was any concern about her performance.

31.     At some point in March 2016, plaintiff spoke with Ms. Gay and objected to the decision not to give her a performance review for the 2015/2016 fiscal year which effectively denied plaintiff any opportunity for a salary increase.  Plaintiff told Ms. Gay that she thought she should get an evaluation, whether or not she was eligible for a raise.  Plaintiff further told Ms. Gay that she had spoken with an attorney and that she believed that denying her an evaluation could be considered retaliatory for having exercised rights under the FMLA.  Ms. Gay responded that she would speak with Mr. Dunlea about plaintiff's annual review and would get back to plaintiff.

32.     On or about April 22, 2016, Ms. Gay called plaintiff into her office and requested that plaintiff provide an updated doctor's note about a disability-related accommodation that allowed plaintiff to wear sneakers at work.  This accommodation had been in place since approximately 2003 – and the defendant had last requested and received a doctor's note in support of the accommodation request in 2013.

33.     Plaintiff had her doctor fax a note to the Firm on the same day reiterating the long-standing disability-related accommodation request that she be allowed to wear sneakers at work.

34.     Ms. Gay subsequently questioned plaintiff further about that accommodation and Ms. Gay expressed unhappiness that there was no definitive end-

6

date since the doctor had indicated that the need for this accommodation was "until further notice."

35. In late April 2016, plaintiff again inquired about her annual performance review, asking Ms. Gay whether she had ever spoken with Mr. Dunlea as she had previously told plaintiff she would do. Ms. Gay responded that she had directed plaintiff to contact Mr. Dunlea about the review.

36. In accordance with Ms. Gay's directive, on or about that same day, plaintiff emailed Mr. Dunlea and requested a few minutes with him the next time he was in the Hartford office to discuss her annual performance review. Mr. Dunlea responded by scheduling a meeting with plaintiff for May 3, 2016.

37. On May 3, 2016, plaintiff met with Mr. Dunlea – and Ms. Gay and Suzanne Baldasare, the Firm's Managing Partner for the New England Offices, though plaintiff had not been given notice that those individuals would also be attending the meeting.

38. Mr. Dunlea began the meeting by angrily questioning plaintiff about her disability-related accommodation request to wear sneakers. During this part of the discussion, Ms. Gay suggested that plaintiff had altered the date on the April 22, 2016 doctor's note that had been provided – but plaintiff pointed out that the fax time-stamp at the top of the note confirmed the date and there was no further discussion of that issue.

39. Mr. Dunlea next returned to the subject of plaintiff's disability-related accommodation request, interrogating plaintiff about her need to wear sneakers and about the specifics of her foot impairment. Plaintiff responded to Mr. Dunlea, explaining the nature and symptoms of her foot impairment and the interplay of this condition with her diabetes. Mr. Dunlea responded by accusing plaintiff of having a problem with the

Firm's dress code, which plaintiff denied.  Mr. Dunlea then stated that plaintiff had worn pants that, together with her sneakers, allegedly looked like jogging pants and he pointed out that plaintiff had sometimes worn a hooded sweatshirt.  Plaintiff tried to correct Mr. Dunlea, noting that she had not worn jogging pants and that, while she sometimes did wear such a sweatshirt, it was only to and from the parking garage – and she did not continue to wear it during the work day.

40.    Mr. Dunlea then turned the meeting to discussion of plaintiff's performance review – and he made a remark about plaintiff "suing" the Firm because she was not getting a performance review.  He seemed very upset.  Plaintiff responded that she had not said that she was going to sue the Firm, but had simply told Ms. Gay that she had spoken with an attorney so that she could understand her rights.

41.    Mr. Dunlea then told plaintiff that if she did not call out from work from May 1 through November 1, 2016, and if she reported to work consistently during that time, then the Firm would give her a performance review in November 2016.

42.    Later that same day, Ms. Gay sent plaintiff an email in which she stated that the Firm would "reconsider" a performance review in six months, "if moving forward you consistently report to work and have uninterrupted attendance, with the exception of prescheduled PTO days."

43.    On or about May 9, 2016, plaintiff provided another doctor's note to Ms. Gay, Mr. Dunlea and Ms. Baldasare regarding her disability-related accommodation request to wear sneakers.  This note indicated that the request is "secondary to an ongoing back problem" – which was a reference to plaintiff's degenerative disc disease.

44. Throughout May 2016, plaintiff was experiencing exacerbation of symptoms related to her degenerative disc disease and was scheduled to undergo an epidural procedure on May 27, 2016. Plaintiff sought approval to take a few days off from work around the long holiday weekend for that procedure. In the past when she had undergone this procedure, she was able to return to work within a matter of days. The morning of the procedure, she learned that the insurance company had denied the claim and cancelled the procedure. On information and belief, if the procedure had proceeded as scheduled, then plaintiff would have returned to work within the similar few-days-timeframe as she had in the past.

45. On or about June 7, 2016, plaintiff contacted Ms. Gay and Christina Insinga, the Firm's Benefits Manager, and provided notice from her doctor that plaintiff would be out of work because of her disability (degenerative disc disease) until June 20, 2016 pending further testing. Plaintiff expressly entitled the subject of this email "Request for ADA Accommodation & STD." At this time, plaintiff was aware that she had exhausted her annual FMLA leave allowance in or about March 2016.

46. On June 15 and 16, 2016, plaintiff exchanged several more emails under that subject line with Ms. Insinga, which were copied to Mr. Dunlea and Ms. Gay, in which plaintiff updated them about her status, her then-current medical treatment and prognosis, and her absence.

47. On Friday, June 17, 2016, plaintiff emailed Ms. Insinga, again copying Mr. Dunlea and Ms. Gay, to notify them that she would not be returning to work on the following Monday, June 20, because her doctor was still waiting for test results and planning her treatment. Plaintiff expressly explained that her accommodation request

9

under the ADA was "for medical leave to treat [her] disability (back)," and she provided some details about her then-current limitations, pain and symptoms. She further advised that updated information from her doctor would be sent on Monday, June 20, 2016.

48. On June 20, 2016, plaintiff again emailed Ms. Insinga to notify her that her doctor was faxing an updated note and information about plaintiff's medical status. On information and belief, the doctor did provide such a note to the Firm which updated plaintiff's return to work date to July 5, 2016.

49. On June 21, 2016, plaintiff's long-term, live-in boyfriend and caretaker died very suddenly. The Firm was notified of his passing.

50. On June 22, 2016, Mr. Dunlea sent plaintiff a letter and enclosed paperwork so she could apply for short term disability ("STD") benefits. He also asked for further information about plaintiff's request for ADA accommodation and stated that she had no further PTO allowance available to her.

51. On June 23 and 24, 2016, plaintiff exchanged emails with Mr. Dunlea, copied to Ms. Insinga and Ms. Gay, about receiving the STD paperwork and reiterating the expected return to work date of July 5, 2016.

52. On June 24, 2016, Mr. Dunlea sent plaintiff another letter in which he again asked plaintiff to confirm that she was filing an STD claim and that she was requesting an ADA accommodation and the basis for such request. He also stated that plaintiff would need to provide a release from her doctor upon her return to work, including a list of any restrictions, and directed plaintiff as to when and how to provide such release.

53. On July 1, 5, and 8, 2016, plaintiff exchanged emails with Ms. Insinga about an updated note from her doctor which updated her return to work date to July 15, 2016 and about plaintiff's short term disability application. Plaintiff again explicitly requested this leave as a disability-related accommodation.

54. On or about July 13, 2016, plaintiff's doctor provided an updated note to the Firm which updated her return to work date to July 20, 2016. Ms. Insinga and plaintiff exchanged emails about the necessary paperwork and specifically that it should indicate whether plaintiff's return to work would be with or without restrictions.

55. On July 18, 2016, plaintiff provided the Firm with a medical note indicating that she was released to return to work, full time and without restrictions, on July 20, 2016.

56. On July 20, 2016, plaintiff returned to work as scheduled.

57. On July 21, 2016, plaintiff called out sick. In so doing, plaintiff left a voicemail message for Ms. Gay in which plaintiff advised Ms. Gay that she was experiencing stomach problems.

58. That same day, on July 21, 2016, a letter terminating plaintiff's employment was hand-delivered to plaintiff's home.

59. The termination letter advised that plaintiff had exhausted her FMLA leave in March, and that the Firm had allegedly given plaintiff "substantial additional leave not required by law or Firm policy...", and it stated that plaintiff's absence on that day had led the Firm to conclude that plaintiff was "unable to attend work on a regular basis." Accordingly, it stated that plaintiff's employment was being terminated, effective immediately.

60. On information and belief, at the time of her termination, plaintiff had several days of PTO time that were due to be returned to her as part of the processing of her STD claim.

61. At no point on July 21, 2016 did anyone from the Firm communicate with the plaintiff about her absence on July 21, including as to the reason or about plaintiff's ability to return to work thereafter.

62. At no point in 2015 or 2016 did anyone from the Firm notify plaintiff or make her aware that there was any concern about her performance, or about her non-medical-related absences or her use of PTO time, or that she was in any way at risk for discipline or termination.

63. On the evening of plaintiff's termination, plaintiff sent a text message to both attorneys Jacques and Klau informing them that she had been terminated and telling them that it had been a pleasure to work with them. Both attorneys later responded, separately, that they had not been notified of plaintiff's termination until after it had happened.

64. On information and belief, the decision to terminate plaintiff's employment was made by Mr. Dunlea.

65. On information and belief, Mr. Dunlea is not disabled and has not requested disability-related accommodations under the ADAAA and/or CFEPA.

66. On information and belief, Ms. Gay and/or Ms. Insigna provided input and/or made recommendations to Mr. Dunlea in connection with the decision to terminate plaintiff's employment.

67. On information and belief, Ms. Gay is not disabled and has not requested disability-related accommodations under the ADAAA and/or CFEPA.

68. On information and belief, Ms. Insigna is not disabled and has not requested disability-related accommodations under the ADAAA and/or CFEPA.

69. On information and belief, neither Mr. Dunlea, nor Ms. Gay, nor Ms. Insinga, have exercised rights under the FMLA.

70. On information and belief, neither Mr. Dunlea, nor Ms. Gay, nor Ms. Insinga, have engaged in protected activity under the ADAAA, the FMLA and/or CFEPA by previously expressing opposition to actions/conduct that he/she believed may be discriminatory and/or retaliatory.

**COUNT ONE:** **DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA**

71. Plaintiff hereby repeats, realleges and incorporates paragraphs 1-70 above.

72. Plaintiff is a qualified individual with a physical disability within the meaning of the ADAAA, 42 U.S.C. §§12102(1) and 12111(8).

73. In the alternative, plaintiff is a qualified individual who was regarded by defendant as having a disability and/or who had a record of a disability within the meaning of the ADAAA, 42 U.S.C. §§12102(1) and (3), and 12111(8).

74. Plaintiff exercised rights protected under the ADAAA by seeking disability-related accommodations.

75. Notwithstanding her disability, plaintiff was able to perform the functions of her position with or without reasonable accommodations.

76.     Defendant's stated reasons for terminating her employment are a pretext for disability discrimination. Instead, defendant's decision was substantially motivated by unlawful animus toward the plaintiff because of her disability, perceived disability, or record of disability and/or by her disability-related accommodation requests.

77.     By the acts and conduct described above defendant unlawfully discriminated against plaintiff because of her disability in violation of the ADA, 42 U.S.C. §12112 et seq.

78.     By terminating plaintiff's employment because of her disability, defendant acted with malice and/or with reckless indifference for plaintiff's federally protected rights.

79.     As a result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer a loss of employment and damages, including lost wages and compensation, lost benefits and other attendant rights, privileges and conditions of employment, and she has suffered and continues to suffer pain, suffering and other emotional distress.

**COUNT TWO:     DISABILITY DISCRIMINATION IN VIOLATION OF THE CFEPA**

80.     Plaintiff hereby repeats, realleges and incorporates paragraphs 1-70 above.

81.     Plaintiff is a person with a physical disability within the meaning of the CFEPA, Conn. Gen. Stat. §46a-51(15).

82.     In the alternative, plaintiff is a person who was regarded by defendant as having a physical disability and/or who had a record of a disability within the meaning of the CFEPA.

83. Plaintiff exercised rights protected under the CFEPA by seeking disability-related accommodations.

84. Notwithstanding her disability, plaintiff was able to perform the functions of her position with or without reasonable accommodations.

85. Defendant's stated reasons for terminating her employment are a pretext for disability discrimination. Instead, defendant's decision was substantially motivated by unlawful animus toward the plaintiff because of her disability, perceived disability, or record of disability and/or by her disability-related accommodation requests.

86. By the acts and conduct described above defendant unlawfully discriminated against plaintiff because of her disability in violation of the CFEPA, Conn. Gen. Stat. §§46a-60(b) and 46a-100 et seq.

87. As a result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer a loss of employment and damages, including lost wages and compensation, lost benefits and other attendant rights, privileges and conditions of employment, and she has suffered and continues to suffer pain, suffering and other emotional distress.

**COUNT THREE:   RETALIATION IN VIOLATION OF THE ADAAA & THE CFEPA**

88. Plaintiff repeats, realleges, and incorporates paragraphs 1-70 above.

89. By the conduct described above including, but not limited to, by her actions in connection with pursuing disability-related accommodation requests, plaintiff engaged in protected activity under the ADAAA and the CFEPA.

90. Defendant was aware of the plaintiff's protected activity.

91. Plaintiff was terminated because of her protected activity and/or plaintiff's protected activity was a substantial motivating factor in the defendant's decision to terminate her employment.

92. Defendant's stated reasons for terminating plaintiff's employment are a pretext for retaliation for the plaintiff's having engaged in protected activity.

93. By the acts and conduct described above defendant unlawfully retaliated against plaintiff because of her protected activity in violation of the ADAAA, 42 U.S.C. §12203 and the CFEPA, Conn. Gen. Stat. §46a-60(4).

94. By terminating plaintiff's employment because of her protected activity, defendant acted with malice and/or with reckless indifference for plaintiff's statutorily protected rights.

95. As a result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer a loss of employment and damages, including lost wages and compensation, lost benefits and other attendant rights, privileges and conditions of employment, and she has suffered and continues to suffer pain, suffering and other emotional distress.

**COUNT FOUR:** <u>**VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT**</u>

96. Plaintiff repeats, realleges, and incorporates paragraphs 1-70 above.

97. Plaintiff is a person with a serious medical condition as defined by the FMLA, 29 U.S.C. §2611 et seq.

98. By the actions described above in paragraphs 22-23, and 25, plaintiff exercised rights protected under the FMLA.

99. Defendant was aware that plaintiff exercised rights protected under the FMLA as described in the preceding paragraph.

100. Defendant's decisions to refuse to give plaintiff an annual performance review on or about March 9, 2016 and thereby to deny her any opportunity for a resultant salary increase, as described above in paragraphs 28 and 41-42, was discriminatory and/or was in retaliation for plaintiff's having exercised FMLA rights.

101. Defendant's stated reasons for denying plaintiff an annual performance review on or about March 9, 2016 and thereby for denying her any opportunity for a resultant salary increase are a pretext for discrimination and/or retaliation for the plaintiff having exercised FMLA rights.

102. By the actions described above in paragraphs 25, 31, 35-36 and 40, plaintiff engaged in protected activity under the FMLA by opposing and/or complaining about acts/conduct by defendant which were believed to be unlawful under the FMLA.

103. Defendant was aware that plaintiff engaged in protected activity under the FMLA as described in the preceding paragraph.

104. Defendant's decision to terminate plaintiff's employment was in retaliation for plaintiff's having engaged in protected activity under the FMLA.

105. Defendant's stated reasons for terminating plaintiff's employment are a pretext for retaliation for the plaintiff's having exercised FMLA rights and/or for having engaged in FMLA protected activity.

106. By the acts and conduct described in this Count, defendant unlawfully discriminated and/or retaliated against plaintiff in violation of the FMLA, 29 U.S.C. §§2614 and/or 2615 et seq.

107. By denying plaintiff an annual performance review on or about March 9, 2016 and thereby denying her any opportunity for a resultant salary increase, and by terminating plaintiff's employment, defendant did not act in good faith and acted knowingly and/or with willful indifference for plaintiff's federally protected rights.

108. As a result of defendant's unlawful conduct, plaintiff has suffered and continues to suffer a loss of employment and damages, including lost wages and compensation, lost benefits and other attendant rights, privileges and conditions of employment.

## **DEMAND FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court:

1. Order defendant to cease and desist from discriminating and/or retaliating against plaintiff as alleged herein;

2. Order defendant to reinstate plaintiff to her former position, or the position she would have been in, or a substantially similar position, absent the defendant's unlawful conduct;

3. Order defendant to make plaintiff whole for all lost wages and benefits of employment, with interest;

4. Award plaintiff liquidated damages pursuant to her FMLA claim;

5. Award plaintiff compensatory and/or punitive damages pursuant to her ADAAA and/or CFEPA claims;

6. Award plaintiff her reasonable attorneys' fees and costs; and

7. Award plaintiff all other legal and/or equitable relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The plaintiff hereby demands a trial by jury as to all claims to which she is entitled as a matter of law.

RESPECTFULLY SUBMITTED,

THE PLAINTFF

By: _____
Nicole M. Rothgeb  ct26529
Livingston, Adler, Pulda, Meiklejohn
  & Kelly, P.C.
557 Prospect Avenue
Hartford, CT  06105-2922
(860) 233-9821
nmrothgeb@lapm.org

20